## Johnson, Administrator v. Wren.

1. A party who has replied to a plea, cannot assign for error, that the Court refused to strike it out; the objection is waived.
2. A motion to strike out a plea is addressed to the discretion of the Court, and its refusal is not revisable on error.
3. The Court may in its discretion, if the plea is manifestly bad, strike it out, or put the party to his demurrer; but unless obviously insufficient, the proper mode is to demur.
4. When the statute of limitations commences running, the death of neither party impedes its operation.
5. But it does not commence running until some one is entitled to sue or be sued. Therefore, in trover, the statute does not commence running against an administrator till administration is granted, where the defendant acquired the property after the death of the intestate.
6. The husband's representative is not entitled to the personal property of the wife, unless reduced to possession by the husband during coverture.
7. And such possession must be the possession of the husband; his possession as agent or trustee for another is insufficient.
8. Where the Court below has erred. but the record shews that on another ground, the plaintiff is not entitled to recover, the Court will not reverse a judgment below obtained by the defendant.

This was an action of Trover, brought by J. Johnson, as administrator of S. Ramsey, against W. Wren, for the conversion of eleven slaves. The writ was returned to the fall term 1827, of Dallas Circuit Court. The plaintiff declared as administrator, and made profert of letters of administration, granted to him on the estate of Ramsey, in Abbeville district, State of South Carolina, on the 20th of October, 1824. The defendant pleaded, 1st. the general issue; 2nd. that the defendant had possession of the slaves sued for in South Carolina, for more than —— years after the accruing of the cause of action in that State; 3d. that the defendant has had peaceable, quiet, and uninterrupted possession of the slaves sued for, for more than six years next before the commencement of this suit; 4th. that more than six years had elapsed next after the cause of action accrued. The plaintiff moved the Court to strike out the second plea, which was overruled, and the plaintiff then took issue to the first plea, and replied in short to the other pleas.

At October term, 1828, before the Honorable Anderson Crenshaw, the issues were tried by a jury, and a verdict found and judgment rendered for the defendant. A bill of exceptions was taken by the plaintiff, by which it appears that on the trial, he offered evidence to prove that the negroes in question, were conveyed in 1809, by James

Wardlaw to Jane Wardlaw, for a valuable consideration;

that in 1816, Jane Wardlaw intermarried with S. Ramsey, the plaintiff's intestate, she still owning said slaves, and no one having adverse possession of them, except her brother James Wardlaw, who had them hired; that she was house-keeper for her said brother, and that the slaves were under her care as house servants; that in a few days after the marriage, Ramsey died, leaving the said negroes as he found them. His widow afterwards, and before the grant of letters of administration, intermarried with William Wren, the defendant, and carried to him the possession of said negroes, above twelve months after the death of the plaintiff's intestate. The evidence further shewed that Wren, a few weeks after his marriage, removed to Alabama, where he remained until the trial, still keeping possession of the negroes, and that letters of administration were not granted to the plaintiff, till the 20th of October, 1824. The statute of limitations being pleaded, the plaintiff by his attorney, moved the Court to instruct the jury, that in an action of trover by an administrator, against one who got possession of the property in question, after the death of the intestate, the statute of limitations does not commence running, until the time of the grant of letters of administration to such administrator; and further, that where one dies intestate, leaving property in possession of his widow, who afterwards marries and carries to her husband the possession of such property, the possession of the husband so acquired, is not *per se* so tortious or illegal, that an action of trover may be maintained before demand by the administrator and refusal to deliver the property by the person so possessed. The Court refused to give those instructions. By the bill of exceptions, it appears that it was also in evidence, by the testimony of James Wardlaw, the witness of the plaintiff, that having sold the slaves to his sister in 1809, for a valuable consideration, he hired them for ten years; that they were never out of his possession or off his plantation, until after the death of Ramsey; that his sister Jane as his house-keeper, had the control of the negroes as house servants; that he was absent when the marriage of his sister took place with Ramsey, who was his overseer; that after the death of Ramsey, at the request of his sister Jane, he made a deed of gift of the negroes to her, but had then no right to them, and did it solely at her request and to please her. Wren had left South Carolina publicly, and had re-

JULY 1830.

Johnson, Administrator.
v.
Wren.

sided nearly ten years in Alabama.  It was left to the jury to determine from the testimony, whether there was a conveyance from James to Jane Wardlaw in 1809, or any conveyance or sale, before the deed produced by the defendant on the trial, made after the death of Ramsey.  It was also left to the jury to determine, whether Ramsey ever had possession of the negroes sued for, or any of them, otherwise than as the overseer of James Wardlaw.

Johnson, now in this Court, assigns for error, 1st. the refusal of the Court to strike out the plea of the statute of limitations of South Carolina; 2nd, the decisions of the Court as shewn in the bill of exceptions.

BEENE, for the plaintiff in error.  The statute of limitations of a sister State, cannot be pleaded in this.  The question has been settled by authorities, both in England and America, which this Court will respect.  In the case of *Williams v. Jones*,[a] the question was made, and Lord Ellenborough in pronouncing judgment said: "It is said that parties who have contracted abroad, return to this country with the same rights only, which they had in the country where they so contracted; and generally speaking that is so; that is, if the rights of the contracting parties be extinguished by the foreign law, upon the happening of certain events.  But here, there is only an extinction of the remedy in the foreign Court, according to the law stated to be received there, but no extinction of the right; and there is no law or authority for saying, that where there is an extinction of the remedy only in the foreign Court, that shall operate by comity as an extinction of the remedy here also.  If it go to the extinction of the right itself, the case may be different."  All the other judges concur, which settles the question in England.

The decisions in our own country, I deem equally strong, *Nash v. Tupper*,[b] was an action on a note in New York.  The statute of limitations of six years, where the suit was brought, was pleaded: the plaintiff replied that the contract was made in Connecticut, where the limitation was seventeen years; the defendant demurred to the replication, and the Court held it bad, and said that the plea in bar was good.  In *Ruggles v. Keeler*,[c] the Court held that the statute of limitations of a foreign State could not be set up as a bar to a set off, founded on a contract, executed in a foreign State.  *Pearsall v. Dwight*,[d] is a case in point.  The defendant pleaded the statute of limita-

*a* 13 East. 439

*b* 1 Caines 402

*c* 3 Johns. 263

*d* 2 Mass. Rep 84.

tions of New York, to a contract made in New York. These cases shew that the statutes of limitations are municipal regulations, founded on local policy, which have no authority abroad, and with which foreign or independent States have nothing to do. The *lex loci contractus* determines the validity or interpretation of contracts, and the *lex fori*, the time, mode or extent of the remedy. The *lex loci* applies to the right, the *lex fori* to the mode of pursuing it. The first assignment of error, therefore, I conceive must prevail.

The statute of limitations cannot commence running against an administrator, in favor of one who got the property into his possession, after the death of the intestate, until the grant of letters of administration. Letters of administration were not granted to the plaintiff Johnson, in this case, until the 20th October, 1824. The suit was commenced on the 12th day of September, 1827, not quite three years after granting the letters. Samuel Ramsey died in 1816, leaving in the possession of his widow, the slaves for which this action is brought. In 1817, Jane Ramsey, widow of Samuel Ramsey, intermarried with William Wren, and they moved from South Carolina to Alabama, in a short time after the marriage; and as there was no person to take charge of the property, no legal hand to receive it, Wren brought it with him to Alabama, in whose possession it remained until the commencement of this suit in 1827, and now he relies upon the statute of limitations here. It is unreasonable to say that the statute of limitations shall run, in any case, where there is no person known to the law to receive the money or goods; and there was no person in the present case, until the 20th October, 1824, when Johnson was appointed administrator. From the time of his appointment, six years had not elapsed before the commencement of the present action, and therefore, according to the authorities in 4. Bacon,[a] *a* Page 479. which are clear upon this point, the statute is no bar.

Where a person dies intestate, leaving property in the possession of his widow, who afterwards marries, and carries to her husband the possession of such property; the possession of the husband, so acquired, is not *per se* so tortious or illegal, that an action of trover may be maintained before demand and refusal. Where the goods come lawfully into the defendant's possession, as by finding, or *b* 3 Starkie upon the delivery of the owner, or upon a bailment, proof Ev. 1497 and of demand and refusal is necessary.[b] Here the defend- cases there cited.

JULY 1830

Johnson, Administrator
v.
Wren.

a Pages 97 to 100.

b 2 Black. Com. 433.

ant got possession by marriage, which is equivalent to finding, bailment, or delivery.

The broad ground is laid down in Ballantine on Limitations,[a] that the statute of limitations will not commence running in trover until demand and refusal. This doctrine is supported by 3. Blackstone, 153; 7. Modern, 99; 4. Bacon, 475 and the cases cited there.

PICKENS, for the appellee. It will not be necessary as we contend to examine into the strict merits of the second plea. The first assignment of error cannot be supported, because by pleading over the plaintiff has lost all the benefit of exception, to the decision on his motion to strike it out. Joining issue on a plea, waives all objection as to the insufficiency of the plea in law. By doing this he rests his objection entirely and alone on the untruth of the plea.

The second assignment of error, involves a question sufficiently important to require a close investigation. Where the wife has an undoubted right to personal property, accompanied with possession at the time of the marriage, the right passes to the husband; but if she is not in possession, and he dies before reducing it into his own possession, the property survives to her, and not to his representatives.[b] The material question therefore is, in whose possession was the property, during the marriage of Ramsey and wife. We contend Ramsey never had possession; his possession as overseer of Wardlaw was not his own possession, it was the possession of Wardlaw, he was merely his agent, so with the possession of his wife; she was merely his house-keeper. Admitting that they then belonged to her, she had disposed of the possession for ten years; the slaves were subject during the time of the leasing, to the control of Wardlaw, and not of either Ramsey or his wife. There cannot be such a thing as two consistent possessions at the same time, and the whole possession was in Wardlaw, as well as the right of possession. The possession therefore of Ramsey and wife during the coverture, was not such a one as can benefit the plaintiff; no possession can enure to any one, except it be his own possession.

It is insisted that no statute of limitations can run until after the granting of letters of administration. This is the broad question. The plaintiff cites 4th Bacon, to support this position; but there it was a money demand; length of possession in such a case, gives no additional right; there is a manifest distinction, between a case where title vests by

length of possession, and the case of a money demand. JULY 1830. This distinction will be found to be admitted in Bacon, by referring to a page or two after the one cited. This Court Johnson, Administoator.<br>v.<br>Wren. has determined, that in certain cases where the statute has commenced running, one year will be given to an administrator to bring his suit,[a] but the Court will not allow such a length of time as eight years; administration cannot a 1 Stewart 254. be allowed to sleep for years, and then to come and rip up every thing. Contracts may, in such a length of time, run into a hundred ramifications. An administrator, it is said, is the representative of creditors; any creditor might, at due time, have sued Wren as executor *de son tort*, and in other ways any right might have been asserted long since. If the case now before the Court is left untouched by statute or precedent, and I believe it is, there must be some time fixed when administration shall be barred, else great evils might arise. But we are content to rest our defence on the fact, that Ramsey never had a possession of his own, and any other must be insufficient.

GORDON, on the same side. Though the pleas are filed in short, being replied to, they are to be taken as perfect and complete, as if drawn out in full and perfect form,[b] and taking issue on them is a waiver of all legal objections b Minor's Ala. Rep. to them. The fact of the hiring of the property for ten years, which ended only in 1819, is conclusive to shew that Ramsey never had, and could not have had the possession of the slaves, except as overseer, which was insufficient. To test this, let us simply ask the question, could he or his wife during that time, dispose of or control the property or its possession, against the will of every one else? They could not legally do so against the will of Wardlaw; then this is conclusive to shew that he and not them had the exclusive right to control them.[c] The plaintiff had no right to demand the instructions to the jury c 2 Call's Rep 376. which he did; the facts did not warrant the instructions prayed for, and the Court was correct in leaving the facts to the jury in the manner it did. Our statute of limitations contains savings in favor of certain persons only, but none applicable to the present case. It has been held in England, under an equitable construction of the statute of 21. James 1. that an administrator might be allowed twelve months to sue, if the demand was not barred at the time of the death of the intestate, though the statute contains no such clause, and it has been said, the same con-

23

struction has been adopted here,[a] but that does not reach this case. The administrator here, is neither within the saving nor the equity of any statute of Alabama, or of South Carolina; if he was he should have shewn it.[b]

[a] 1 Stewart 254.
[b] 10 Vesey 93.

By JUDGE COLLIER. Out of the several matters assigned for error, the following questions arise:

1st. Is there error in the refusal of the Court to strike out the second plea of the defendant on motion?

2nd, Did the Court err in refusing the instructions asked, and in giving others as expressed in the bill of exceptions?

1st. It is too late for the plaintiff to object that the Court erred in refusing to strike out the second plea of the defendant. The motion to strike out, may in most respects, be assimilated to a demurrer. If after demurrer overruled, the defendant had replied, he could not have objected that the judgment of the Court upon the demurrer was erroneous. In this case, the plaintiff has replied, and by analogy, the refusal of the Court to strike out, is not an available objection on error.[c] In order to uniformity of practice upon this point, it is proper to observe, that we do not believe every defective plea should be stricken out on motion, but that the party should be put to his demurrer, if he would not be prejudiced thereby, whenever the plea objected to has any pretensions to be considered as such. Those cases in which statutes direct issues to be made up under the direction of the Court, will of course form objections to these remarks.

[c] Minor's Ala Rep. 21, 178, 350.

The plea in the present instance, is obviously defective, if in nothing else, at least in not averring that possession of the slaves by the defendant in South Carolina, was for a sufficient length of time to bar the action, according to the laws of that State, and that the bar was complete before they were removed thence. We will not however say, that for this object the motion to strike out should have prevailed; it was competent for the Court to have either directed, the plea to be stricken out, or forced the plaintiff to demur. And the motion to strike out being addressed to the discretion of the Court, is not revisable by us.

2nd. The second inquiry, for the sake of perspicuity, may be subdivided thus: 1st, when did the statute of limitations begin to run against the representatives of Ramsey? 2nd, Did the slaves vest in Ramsey so as to go to his representatives after his death?

1st. In the action of trover, the conversion is the gist of the action, there is consequently no right of action, until the possessor asserts a claim to the property, or does some other act incompatible with the existence of title in another. The usual *indicia* of a conversion, are a tortious possession, or a refusal to deliver the property sought to be recovered, on the demand of the party claiming; in either of which instances the cause of action has accrued, and the statute of limitations begins to run. But a cause of action can only have accrued, when there is some one authorized to prosecute it; for though a party may have rendered himself liable to an action, yet as no one is entitled to its benefit, strictly, there cannot be said to be a cause of action existing against him; and hence, the statute of limitations cannot begin to run, until the right to the remedy vests some where.

Bacon thus lays down the law on this point. "If A receives money belonging to a person who afterwards dies intestate, and to whom B. takes out administration, and brings an action against A., to which he pleads the statute of limitations, and the plaintiff replies, and shews that administration was committed to him such a year, which was *infra sex annos*, though six years are expired since the receipt of the money, yet not being so since the administration committed, the action is not barred by the statute." 4. Bacon's Abridgment, 479; Salkeld, 422; Curry vs. Stephenson, Skinner, 555; 4. Modern, 376, and Carthew, 336, are cited. In the last case cited, it is said Holt was of opinion that the administrator should have six years from the time of granting administration, according to Stanford's case cited in Saffin's case.[a]  Mr. Wilson, the learned editor of Bacon, remarks that the facts of *Curry vs. Stephenson* are incorrectly stated by Bacon in the quotation we have made, that the report of the case by Skinner, shews that the money was not received until after the death of the intestate; so that before administration was granted, there was no person who could claim it, and the statute begins to run only from a time to demand the thing, vests in some one:" again, "had the money been received in the life time of the person who died intestate, that person would have had a right against A. vested in him, and from that period, the time of limitation would have commenced, and the statute would have been a bar. For when once the time of limitations has begun to run, it suffers no interruption from the death of

[a] Cro. Jac. 60 61.

JULY 1830.   the claimants, nor does it revive in favor of any person
upon whom the right of claim may devolve."

Johnson, Administrator v. Wren.

We have not had leisure to examine all the authorities cited, to sustain the text of Bacon, but have looked into the report of *Curry vs. Stephenson* by Salkeld, and find that the facts are misrecited by Bacon, and are entirely such as the editor supposes.

Let us inquire whether the rule, deducible from these authorities, is countervailed by the decision in *Webster vs. Webster,*[a] to which we have been referred by the defendant's counsel. In that case, the testator died in 1786, probate was taken in 1802. The Lord Chancellor allowed the plea of the statute for the reason expressly, that the defendant, who was the executor, had possession of the goods, and might have been sued as executor *de son tort,* more than six years previously to the commencement of the action, but that if no person was suable previous to 1802, the statute could not have been successfully pleaded. The principle of this decision is clearly in accordance with that of *Curry vs. Stephenson.*

*a* 10 Vesey 93.

The legal conclusions which these cases establish, are 1st. that the statute of limitations does not begin to run until some one is entitled to sue, or liable to be sued; 2nd. when the statute once begins to run, the death of neither party impedes its operation; and these conclusions are in our opinion founded on correct principle.

2nd. With regard to the last subdivision, it is a rule too well settled now to admit of controversy, that the husband's representative is not entitled to the personal property of the wife, unless it came into the husband's possession in his life time; but the wife will take as survivor, and reference need only be made to authority, for the purpose of shewing its application.

*b* 2 Call 457 marginal.

In *Wallace et ux. vs. Taliaferro et ux.*[b] it appears that the husband, in conjunction with his co-executors, had possession of personal property, bequeathed to the wife by the testator's will, and died leaving his wife. Yet it was ruled, that as the husband was possessed as executor, and not as husband, that his devisee was not entitled to recover as against the wife or her representatives. So it has been determined that money in the hands of trustees, for the benefit of a wife, not her separate property, on the death of her husband should go to the wife, and not to the executor of the husband.[c]

*c* 1 Vesey 161
*d* 1 Chap. title Baron and Fem.

Reeves, in his Domestic Relations,[d] examines many

English authors on this point, from which these deductions may be made: (1st.) that the property of the wife which the husband did not reduce into possession in his life time, vests in her as survivor, if he die in her life time; (2nd.) that the husband may assign them for a valuable consideration, but cannot bequeath them by will.

Chancellor Kent, in remarking upon this very interesting topic, expresses himself thus: "What will amount to a change of property in action, belonging to the wife, so as to prevent it from going back to the wife, in case she survives her husband, was discussed in the case of *Schuyler vs Hoyle*,[a] it was shewn that "the husband may assign for a valuable consideration, his wife's *choses* in *action* to a creditor, free from the wife's contingent right of survivorship; but a voluntary assignment by the husband of the wife's choses in action, without consideration, will not bind her if she survives him." Again, the learned commentator remarks, "the Court of Chancery has always discovered an anxiety to provide for the wife out of her property in action, which the husband may seek to recover. If he takes possession in the character of trustee, and not of husband, it is not such a possession as will bar the right of the wife to the property, if she survives him. The property must come under the actual control and possession of the husband, *quasi* husband, or the wife will take as survivor, instead of the personal representatives of the husband.[b]

From the facts as presented by the bill of exceptions, it is apparent that the plaintiff's intestate never had either the actual or potential possession of the slaves, for the alleged conversion of which this action is instituted; and it would thence follow that the plaintiff is not entitled to recover, though the statute of limitations interposes no bar.

The Court are unanimous in the opinion that there is error in the refusal of the Judge to instruct the jury that the statute of limitations only began to run, from the time a right to sue vested some where. But a majority of the Court are of opinion, that in as much as it appears from the bill of exceptions, that a witness offered by the plaintiff, proved that the intestate never had the possession of the slaves, and that consequently the plaintiff is not entitled to recover, that the judgment should be affirmed.

Satisfied so far as the facts are before us, that justice has been done; I yet believe that the judgment should be reversed and the cause remanded. When this Court is called

*JULY 1830.*

Johnson, Administrator
v.
Wren.

*a* 5 John. Ch. Rep. 196.

*b* 2 Kent's Com 115 and 16.

on to revise the decisions of inferior jurisdictions, in my judgment it is not authorized to institute the broad inquiry whether justice has been achieved.    If a legal error is discovered upon a point, material and pertinent, duty requires the reversal of the judgment, without regard to the ulterior benefit which will result to the plaintiff in error.    The jury are the legitimate arbiters of fact, and I cannot pretend to say what influence the instructions with regard to the statute of limitations may have had upon their verdict; it may have been upon the ground alone that the statute was a bar to the action, that they found in favor of the defendant.    If so the material facts of the case have not been passed on by the jury.

Though it is not competent for a party to discredit a witness introduced by himself, yet he is not inhibited from examining different witnesses to the same point, because their statements may be contradictory.    Now as the bill of exceptions does not shew the reverse, it may be that other witnesses than the one named were examined, whose relations of facts were not coincident.    These are briefly the reasons why I believe that the judgment of this Court should be different.

Judgment affirmed.

JUDGE CRENSHAW not sitting.