## The Lehigh Valley Railroad Company

*v.*

### Henry McFarlan and others.

1. A bill of peace can only be maintained after the complainant has satisfactorily established his right at law, or where the persons who controvert it are so numerous as to render the intervention of this court necessary to save multiplicity of suits.

2. Where several plaintiffs bring different suits at law against one defendant, some for diminishing their supply of water, and another for backing water on his mill-wheel, no ground for interference to prevent multiplicity of suits is shown, although the alleged injuries are done in the use by the defendant of one stream.

Bill for relief. On motion on behalf of all the defend-
ants to dissolve the injunction; on McFarlan's part, on bill
and affidavits and answer, and on the part of the other
defendants, on the bill, and annexed affidavits. Also, on
general demurrer by all of the defendants, except McFarlan.

*Mr. H. C. Pitney* and *Mr. E. D. Halsey*, for defendants.

*Mr. T. N. McCarter* and *Mr. F. T. Frelinghuysen*, for
complainants.

THE CHANCELLOR.

This is a bill of peace. The complainants are the lessees
of the Morris Canal and Banking Company, and as such
have, since 1871, operated the canal and other works of that
company. The canal crosses the Rockaway river at Dover,
and is so constructed that for a short distance the river is
used as a part of it. In order to secure sufficient water in
the river, at that point, to float the boats at all times during
the season of navigation, a dam was built across the river.
At the junction of the canal with the river, on the east side
of the latter, there is what is called a guard-lock, placed
there to prevent the water of the river, when at unusual
height, from flowing into the canal below the river on the
east, but serving no other purpose. It is usually left open.
The defendant McFarlan is the owner of a rolling-mill at
Dover, on the river above the dam. The defendants, the
Halseys and Beach, are owners of land on the river at Rock-
away, below Dover, on which there is, in the river, a nat-
ural fall, furnishing water-power by which the machinery
of a grist-mill and a saw-mill, and the machinery of an iron
forge or bloomery on their land, are driven. The defendant,
Van Winkle, is their lessee of the mills, and Hoagland their
lessee of the forge.

The complainants have been prosecuted in the supreme
court of this state for damages, in several actions which are
still pending. Three of them were brought by McFarlan.

In the first no declaration was filed. The other two were brought to recover damages for unlawful flowage of his land, resulting from the maintenance at an unlawful height (as he alleges), by the complainants, of the before-mentioned dam; two others of the suits were brought by the Halseys (in which designation Susan E. Beach is included), for damages to them as owners, for the diversion of water from their before-mentioned land; two others of the suits were brought by the defendant, Van Winkle, for damages to him as tenant of the grist-mill and saw-mill, for the diversion of the water, and two others by Hoagland, as tenant of the forge or bloomery, for damages for injury thereto from the same cause. Of the suits brought by McFarlan, the first was begun September 21st, 1876. The damages therein were laid at $10,000. As before stated, no declaration has been filed in it, and it is still pending. The second was brought December 30th, 1876. The declaration therein is for damages for the unlawful backing of the water of the river on his land, to the damage of his rolling-mill thereon, from April 1st, 1872; the backing being occasioned, as alleged in one count, by the increasing of the height of the dam, and, in the other count, by continuing the dam at an unlawful height. The damages were laid in that suit at $10,000. The complainants, after filing the plea of the general issue to the declaration, removed the suit (they being a corporation under the laws of, and located in, the state of Pennsylvania) by petition to the circuit court of the United States for the district of New Jersey, and it has been no further proceeded in since that time. The third was brought after the removal of the second, and on September 22d, 1877, for the recovery of damages for the like grievances from the date of the second suit, December 30th, 1876. The damages were laid at $490. The complainants filed the plea of the general issue therein, and notice was given that the cause would be brought on for trial before the Morris circuit court, to be held on the third Tuesday of January,

1878, but further proceedings therein were stayed by the injunction in this cause.

Of the suits brought by the Halseys, the first was begun on the 22d of September, 1876, and the first of those brought by Van Winkle and Hoagland, respectively, were commenced on the same day. All of those three suits were removed into the federal court, and since then have been no further proceeded in. Three other suits, brought by the Halseys, Van Winkle and Hoagland, respectively, were begun on the 22d of September, 1877, for the like grievance (the diversion of the water) as their former suits, but the time of the alleged injury in those cases was from the 22d of September, 1876, and the damages were laid, in each case, at $490. In those suits the complainants filed a plea of the general issue, and the causes were noticed for trial, but all further proceedings were stayed by the injunction.

The complainants, by their bill, present three reasons specially applicable to the litigation which has been begun by McFarlan, why that litigation should be drawn into equity. The first is that the dam was originally built on land which, theretofore, had belonged to Henry McFarlan, the elder, and which the Morris Canal and Banking Company acquired of him for the purpose of building and maintaining the dam there, and that the dam was originally erected, not only with the consent of Henry McFarlan, Sr., and by his permission and license, but with his aid; they alleging that it was built at the joint expense of him and the canal company. The second is that the defendant, McFarlan, was, from 1829 to 1833, and from 1844 to 1859, excepting the year 1848, a director of the canal company, and while he was director attended the meetings of the board, and resided at Dover, and was fully cognizant of the affairs of the company, the use made by them of the dam and of the flash-boards of which he now complains, and also knew of and participated in the transactions of the company in deepening and widening the canal, and reconstructing the locks and planes thereof to accommodate

Lehigh Valley R. R. Co. *v.* McFarlan.

boats of a larger size than the canal had theretofore been capable of accommodating; that that work was done at a great expense, and would be useless without the dam and flash-boards to raise the water; that he never, while he was a director, made known to the company that their use of the dam and flash-boards was an infringement on his rights, or that he ever intended to question their right to use them, and that he has for thirty years permitted them to continue the use of the dam and flash-boards at their free will and pleasure, without interruption or hindrance.

As to the litigation by the Halseys and the tenants of their property, a single consideration, as peculiarly applicable thereto, is presented by the bill, and that is that the canal company, after the enlargement of their canal, in 1845, settled with and paid Joseph and John D. Jackson, who were then the owners of the property, or one of them, in full for all damages which might be sustained by them, or either of them, by reason of the supposed decrease of the waters of the Rockaway river at the mills and bloomery, by means of the dam and flash-boards, and received from the Jacksons a grant in fee, in the nature of a perpetual license, to maintain the dam and flash-boards, and that the license or grant has, through lapse of time, been lost; and that the Halseys are the children and heirs at law of a daughter of Joseph Jackson, and hold their present title and claim to the lands under him.

The bill presents another consideration applicable to the litigation of all the defendants, viz.: that the complainants ought in equity to be protected against these numerous suits. The considerations which are presented as peculiarly applicable to the litigation by McFarlan, were both appropriate to the case of the complainants in the suit brought by them against him and others in this court, to restrain him and them from removing the flash-boards, and which has recently, on final hearing, terminated in favor of the defendants. *Lehigh Valley R. R. Co.* v. *McFarlan*, 3 *Stew.* 180. In that case this court adjudged, on final hearing of the cause, after full

opportunities to the parties to litigate the questions involved in the suit, not only that the complainants had no right to maintain the flash-boards on the dam, but that McFarlan vehemently protested against the use of them as long ago as 1857. The vice-chancellor, before whom the cause was tried, says in his opinion, that the evidence shows conclusively that from 1857 to the commencement of that suit, which was in 1875, McFarlan had constantly disputed the right claimed by the complainants, and had forbidden them to exercise it; that the supervisor, Groff, testified that the boards were frequently, during that period, put on in defiance of McFarlan's protests; that in protesting the latter said, "You have no right to put them on, and the day is coming when you shall not do it;" and the vice-chancellor adds that it is undeniable that the right was exercised in defiance of resistance, so far as resistance could be made by words, and in spite of a threat that, if it was persisted in, resort would be had to more efficacious means of protection. He further says that it was insisted, on the argument, that, independent of any question of legal right, the acts and omissions of McFarlan estopped him from denying the complainant's right; that it was claimed that the proofs showed that he stood by passively for a long time and permitted the canal company to expend large sums of money in deepening the canal and enlarging the boats, under the belief that they had an easement in his lands; and also that he, as a director of the canal company, joined in the execution of the lease from that company to the complainants; but he says that in his view neither fact was established by the evidence, and that he regards it as entirely clear that the canal company were not misled by anything which McFarlan said or did, and that the latter constantly resisted the right which the complainants in that cause asserted, and compelled the canal company to exercise it in strife. It may be added that the verification of the bill in the case under consideration establishes nothing on this subject of equitable estoppel, on the ground that McFarlan was a director when the improve-

ments before referred to were made, except the fact that it appears from the records and minutes of the canal company that he was a director during the time stated in the bill. McFarlan, in his answer, denies that those improvements depend at all for their usefulness upon the use of the flash-boards, and says that he never, until after he ceased to be a director, knew or supposed that the depth of water in the four-mile level east of Dover depended on the height of the dam or the use of the flash-boards, or that flash-boards were used to keep the water up to navigable height. On this point it may be further said that the bill, while it sets up a parol license against McFarlan, makes no offer of compensation. As to the other consideration, referring to the original building of the dam, that relates to the original dam itself, of which no complaint is made, and not to the flash-boards; and, moreover, that consideration is available as a defence at law.

But it is enough to say, in reference to the relief claimed against McFarlan in particular, that the court has already, in a suit brought by the complainants against him in respect to the flash-boards, adjudged that the complainants have no right to maintain those boards on the dam, and the injunction restraining him from removing them has been dissolved. It cannot reasonably be expected that it will now restrain him from pursuing his claim for the recovery, by legal proceedings, of damages for the injury which he may have sustained by the unlawful placing of those boards upon the dam.

The consideration presented as specially applicable to the other defendants, the defence of a grant which is lost, is available at law.

But it is urged that this court will interfere to save the complainants from the trouble, vexation and expense of a multiplicity of suits, and it is, in this connection, suggested that the complainants are operating, for the public benefit, a large and important work, a great line of artificial navigation; and that they should be protected by equity against

unnecessary litigation in respect to the consequences or effects of their works on the property of others.   It is urged, also, that the injuries of which McFarlan, on the one hand, and the Halseys and their tenants, on the other, complain, though apparently different, have their origin, if they exist at all, in the same cause, the dam and flash-boards; and that, inasmuch as others owning or possessing lands on the banks of the Rockaway, may make like complaint and bring suit against the complainants at law for the same cause, it is equitable that this court should, itself, determine once for all as to the lawfulness of the structure of the effects of which the complaint is made.   But it is by no means clear, to say the least of it, that the cause of complaint is the same in all of the existing suits.   It is by no means clear that the diversion of water, of which the Halseys and their tenants complain, is due to the dam and flash-boards.   They do not complain of the dam, but allege that the complainants have, by means of their canal, diminished the water supply to which they are by law entitled for their mills and bloomery. McFarlan complains of the flowing which the unlawful height to which the complainants raise the water, by the dam, occasions; but he makes no complaint of diversion. If the flash-boards were removed, and the dam were to stand only at the height which McFarlan regards as lawful, it does not appear that that would prevent the diversion of which the other defendants complain.   On the other hand, if the complainants should cease to divert the water and leave the dam at an unlawful height, they would still flow McFarlan's land.

The case is not one where many claim the same right against one, or where one defends the same right against many.   The rights are different.   If the complainants, in the construction or operation of their works, do injury to persons or property, they must answer for it, as others are compelled to do.   If, in so answering for an injury, it appears that they are harassed with unnecessary suits, this court is open for their relief, to protect them against the vexatious

Lehigh Valley R. R. Co. *v.* McFarlan.

litigation. Now, however, on the one hand, is McFarlan with his suits for his special injury, and, on the other, are the Halseys and their tenants, with theirs, for their particular injury—and that is all. To entitle a party to a bill of peace, it must be clear that there is a right claimed which affects many persons, and that a suitable number of parties in interest are brought before the court; for, if the right is disputed between two persons only, not for themselves and all others in interest, but for themselves alone, the bill will be dismissed, for it cannot then include any persons but the very defendants. *Story's Eq. Juris.* § 857. Said Chancellor Kent, in *Eldridge* v. *Hill*, 2 *Johns. Ch.* 281: " A bill of peace enjoining litigation at law seems to have been allowed only in one of these two cases: Either where the plaintiff has already satisfactorily established his right at law, or where the persons who controvert it are so numerous as to render an issue, under the direction of this court, indispensable, to embrace all the parties concerned, and to save multiplicity of suits. In the case in Atkyns (*Tenham* v. *Herbert*, 2 *Atk.* 483), Lord Hardwicke refused to interfere between two individuals until the right was first tried at law. In the present case there has been but one trial at law, and that one was declared against the plaintiff. The controversy is between him and a single individual, and is pending for decision in the supreme court. If the defendant Hill continues to harass him with fresh suits at law, it is because a new cause of action (as he alleges) continues to arise daily by the continuation of the nuisance. No case goes so far as to stop these continued suits between two single individuals so long as the alleged cause of action is continued, and there has been no final or satisfactory trial and decision at law upon the merits." See, also, *Thompson* v. *Engle*, 3 *Gr. Ch.* 271, 277.

In the case before me, the bill makes no reference to any other person or persons than the defendants, who call, or who will be likely to call, in question the same rights which the defendants contest in the suits at law. See *Willis's Eq. Pl.* 277. For aught that appears in the bill, these defend-

ants are the only persons who have sued, or are likely to sue, the complainants at law. The *gravamen* of the complaint of the bill is, the particular suits therein stated, brought by the defendants. The language of the bill is:

" And your orator shows and charges the truth to be, that the object of the said eight suits at law, now pending against your orator in said supreme court, is, to impeach, controvert and call in question the right of your orator to maintain and use said dam at Dover, which is already in controversy in this court, between your orator and said Henry McFarlan, as hereinabove set forth [referring to the before-mentioned suit for injunction, recently decided], and that your orator, in defending said several suits in a court of law, will be required to maintain and establish the same right in each of said eight cases, and that thereby your orator will be subjected to great and useless expense, and that, to prevent said useless and vexatious litigation and such a multiplicity of suits, your orator is entitled to the intervention and aid of this honorable court."

It appears, from the bill, that the fact that there are eight suits at law, instead of four only (one by McFarlan, one by the Halseys, and one by each of their two tenants), is due to the fact that the complainants, in the exercise of what they claim to be their right, removed four of the suits at law into the federal court. Perhaps, if that removal had not taken place, the four would have been the only suits brought until the questions raised therein should have been determined at law. That they have not been pursued, is probably owing to the fact that they were removed. One set of the suits may perhaps be regarded as mere skirmishing for position. But, however that may be, the suits of each party were brought for damages for different periods of time.

This court would (it should be added), on application of the complainants, protect them against being required to defend themselves on the same claim of right in all the suits brought by each party, and would direct that one of the suits brought by McFarlan, the Halseys and Van Winkle and Hoagland, respectively, be brought to trial, and that the other suits, brought by the same parties for the

Lehigh Valley R. R. Co. v. Society &c.

like injury, from the same cause, stand until the result of that one is known.

The injunction must be dissolved. From what has been already said, it follows that the bill has no equity, and is, besides, multifarious.

The demurrer will be allowed.